```
 1  THOMAS P. O'BRIEN
    United States Attorney
 2  CHRISTINE C. EWELL
    Assistant United States Attorney
 3  Chief, Criminal Division
    JOSEPH O. JOHNS (SBN: 144524)
 4  Assistant United States Attorney
    Environmental Crimes Section
 5       1300 United States Courthouse
         312 North Spring Street
 6       Los Angeles, California 90012
         Telephone:  (213) 894-4536
 7       Facsimile:  (213) 534-4300
         E-mail: joseph.johns@usdoj.gov
 8  ERICA K. MARTIN (SBN : 126865)
    Special Assistant United States Attorney
 9  Regional Criminal Enforcement Counsel
    United States Environmental Protection Agency
10       600 Wilshire Blvd., Suite 900
         Los Angeles, California 90017
11       Telephone: (213) 244-1903
         Facsimile: (213) 244-1933
12       E-mail: martin.erica@epa.gov

13  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
14
                    UNITED STATES DISTRICT COURT
15
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
16
    UNITED STATES OF AMERICA,    )   No. CR 09-96-GAF
17                               )
                 Plaintiff,      )   PLEA AGREEMENT FOR DEFENDANT
18                               )   ALLIANCE CHEMICAL AND
         v.                      )   ENVIRONMENTAL, Inc., dba
19                               )   ALLIANCE FINISHING &
    ALLIANCE CHEMICAL AND        )   MANUFACTURING
20  ENVIRONMENTAL, Inc., dba     )
    ALLIANCE FINISHING &         )
21   MANUFACTURING,              )
                                 )
22               Defendant.      )
                                 )
23  _____)

24       1.   This constitutes the plea agreement (the "Agreement")

25  between ALLIANCE CHEMICAL AND ENVIRONMENTAL, Inc., dba ALLIANCE

26  FINISHING & MANUFACTURING ("defendant") and the United States

27  Attorney's Office for the Central District of California ("the USAO")

28  in the above-captioned case involving the unlawful discharge of

    pollutants into a publicly-owned treatment works ("POTW") operated and
```

maintained by the City of Oxnard Wastewater Treatment Division ("the City") in violation of a pretreatment standard.  This Agreement is limited to the USAO and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities.  The parties enter into the following Agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

### PLEA TO INFORMATION

2.   Defendant gives up the right to indictment by grand jury and agrees to plead guilty to Count Two in the two-count Information in *United States v. Mark Hyman and Alliance Chemical and Environmental, Inc., dba Alliance Finishing & Manufacturing*, charging defendant with the unlawful discharging of a pollutant into a POTW in violation of a pretreatment standard, in violation of 33 U.S.C. § 1319(c)(2)(A).

### CORPORATE AUTHORIZATION

3.   Defendant represents that it is authorized to enter into this Agreement.  On or before the date of entry of the Plea Agreement, defendant shall provide to the United States and the Court a written statement in the form of notarized legal documents certifying that defendant corporation is authorized to enter into and comply with all of the provisions of this Plea Agreement.  The resolutions further shall certify that the President is authorized to take these actions, and that all corporate formalities for such authorizations have been observed.

### ORGANIZATIONAL CHANGES AND APPLICABILITY

4.   This Agreement shall bind defendant, its successor corporation if any, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest").  Defendant, or its successors-in-interest, if applicable, shall provide the USAO

2

and the United States Probation Office for the Central District of California with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to pay the fine or affecting this Agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this Agreement.  Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this Agreement.

## NATURE OF THE OFFENSE

5.   In order for defendant to be guilty of Count Two of the Information, the unlawful discharge of pollutants into a POTW in violation of a pretreatment standard, in violation of 33 U.S.C. § 1319(c)(2)(A), the following must be true: (1) defendant discharged a pollutant into a POTW; (2) the introduction of the pollutant was in violation of a condition or limitation of a federal pretreatment standard or state pretreatment standard maintained by the City's approved pretreatment program or in violation of defendant's permit issued pursuant to that program, and (3) defendant acted knowingly, meaning defendant knew of the act (or omission).  Defendant admits that defendant is, in fact, guilty of the offense as described in Count Two of the Information.

6.   Under well-established principles of corporate liability and *respondeat superior*, as these principles apply in this case, the defendant is liable for the actions of its agents and employees.  New York Central and Hudson River R.R. v. United States, 212 U.S. 481, 495 (1909); United States v. Beusch, 596 F.2d 871, 877 (9th Cir. 1979);

1  <u>United States v. Hilton Hotels Corporation</u>, 467 F.2d 1000, 1004-07
2  (9th Cir. 1972).

<u>PENALTIES AND RESTITUTION</u>

7. The statutory maximum sentence that the Court can impose on an organization for a felony conviction of 33 U.S.C. § 1319(c)(2)(A) is a term of five years probation, pursuant to 18 U.S.C. § 3561(c)(1), a fine of $500,000, pursuant to 18 U.S.C. § 3571(c)(3), or twice the gross loss or gain resulting from the offense, whichever is greater, pursuant to 18 U.S.C. § 3571(d), and a special assessment of $400, pursuant to 18 U.S.C. § 3013(a)(2)(B).

8. Defendant agrees to assess, clean up and remediate the pollutants at issue in this matter to the satisfaction of any local, state, or federal regulatory agency having jurisdiction in this matter, including, but not limited to, the following: the City of Oxnard Wastewater Treatment Division; the City of Oxnard Fire Department; and the United States Environmental Protection Agency. Moreover, defendant agrees to abide by and follow any lawful orders issued by any local, state, or federal regulatory agency having jurisdiction over its business facility. Further, defendant agrees to upgrade and renovate the pretreatment system at the business to the satisfaction of the relevant agencies, and obtain all necessary permits, prior to the date of sentencing. Defendant represents that it has done so, and has thus far spent over $160,000 on pretreatment system upgrades and permit fees.

9. Defendant agrees to pay full restitution to the victims of the offense, including the City of Oxnard Wastewater Treatment Division, and the City of Oxnard Fire Department, who responded to and took samples of the pollutants and hazardous wastes at issue.

Defendant agrees that, in return for the USAO's compliance with its obligations under this Agreement, the amount of restitution is not restricted to the amounts alleged in the count to which defendant is pleading guilty and may include losses arising from the stipulated factual basis attached to this Agreement as well as all relevant conduct in connection with those facts. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding. Defendant has paid penalties and restitution in the amount of $12,000 to the City of Oxnard Public Works, Wastewater Treatment Program, and $6,644.50 to the City of Oxnard Fire Department.

## WAIVER OF CONSTITUTIONAL RIGHTS

10. By pleading guilty, defendant gives up the following rights:

   a. The right to persist in a plea of not guilty.
   b. The right to a speedy and public trial by jury.
   c. The right to the assistance of counsel at trial.
   d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.
   e. The right to confront and cross-examine witnesses against defendant.
   f. The right to call witnesses to testify on defendant's behalf and to subpoena those witnesses to testify.

   By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, constitutional claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING FACTORS

11. Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating statutes relating to the environment. Defendant and the USAO therefore jointly agree that the following sentence is appropriate:

   a. Defendants Alliance Chemical and Environmental, Inc., dba Alliance Finishing and Manufacturing ("Alliance") and Mark Hyman ("Hyman") shall pay a total criminal fine of $80,000, with $30,000 of that fine suspended for use in community service projects as set forth below here and in paragraph 14. Defendant Alliance shall be jointly and severally liable with defendant Mark Hyman. Payment of the community service of $30,000 shall be made in the form of a check payable to the California Hazardous Materials Investigators Association at or before the date of sentencing. Payment of a criminal fine of $50,000 shall be made in the form of a cashier's check payable to the Clerk of the United States District Court at or before the time of sentencing.

   b. Pursuant to U.S.S.G. §§ 8D1.1 and 8D1.2, defendant shall also be sentenced to a term of probation of three years, based upon the following factors set forth in 18 U.S.C. § 3553(a): The nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct.

12. Defendant agrees to pay to the Clerk of the Court for the United States District Court for the Central District of California at

6

1 | or before the date of sentencing the mandatory special assessment of
2 | $400 pursuant to 18 U.S.C. § 3013(a)(2)(B).

3 | 13. The Court will determine the facts and calculations relevant to sentencing and decide whether to agree to be bound by this agreement. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, and (b) correct any and all factual misstatements relating to the calculation of the sentence.

14. Defendant understands and agrees that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). So long as defendant does not breach the agreement, defendant may withdraw from this agreement and render it null and void if the Court refuses to be bound by this agreement. The USAO may, in its discretion, withdraw from this agreement and render it null and void if the defendant breaches this agreement or the Court refuses to be bound by this agreement.

## COMMUNITY SERVICE

15. As noted above in paragraph 10(a), the parties agree that $30,000 of the total criminal fine amount of $80,000 be suspended for the explicit purpose of defendants applying the suspended amount to performing community service pursuant to §8B1.3 of the Federal Sentencing Guidelines and in furtherance of the sentencing principles provided for under 18 U.S.C. § 3553(a). The explicit goal of defendants' required community service is to fund environmental projects and initiatives designed for the benefit, preservation, and restoration of the environment and ecosystems in the Central District of California, including the waters along the counties of Los Angeles, Orange, Ventura, Santa Barbara, and San Luis Obispo, as well as those

1  along the Channel Islands, to be conducted by the California Hazardous
2  Materials Investigators' Association. These projects and initiatives
3  are to include, but are not limited to, education and outreach
4  relating to the environment and ecosystem; and enforcement of
5  environmental and wildlife protection laws. Accordingly, defendant
6  agrees that at or before the time of sentencing, defendant shall pay a
7  total of $30,000 to the California Hazardous Materials Investigators'
8  Association, to be used for the above-stated purposes.

9    16. Defendant agrees that because the payments to the agencies
10 designated by the USAO are community service by an organization,
11 defendant will not seek any reduction in its tax obligations as a
12 result of such community service payment. Defendant further agrees
13 that because these payments are part of a criminal settlement agreed
14 upon in this Agreement, defendant will not characterize, publicize, or
15 refer to the payment as anything other than a community service
16 payment made as a condition of probation incidental to a criminal
17 conviction.

<u>DEFENDANT'S OBLIGATIONS</u>

19    17. Defendant agrees:
20        a. To plead guilty as set forth in this agreement.
21        b. To abide by all sentencing stipulations contained in
22 this agreement.
23        c. To appear as ordered for all court appearances and
24 obey any other ongoing court order in this matter.
25        d. Not to commit any crime.
26        e. To be truthful at all times with Pretrial Services, the
27 U.S. Probation Office, and the Court.
28        f. To pay the above-referenced community service payment

8

at or before the time of sentencing, and to pay the applicable special assessment and restitution at or before the time of sentencing.

### THE USAO'S OBLIGATIONS

18. If defendant complies fully with all defendant's obligations under this Agreement, the USAO agrees to:

   a. Abide by all sentencing stipulations contained in this Agreement.

   b. Not to further prosecute defendant for violations of federal laws arising out of defendant's conduct described in the stipulated factual basis attached to this agreement. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing, the Court may consider the relevant conduct described in the stipulated factual basis attached to this Agreement in determining the applicable Sentencing Guideline range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

   c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, to recommend a two-level reduction in the applicable sentencing guideline offense level, pursuant to U.S.S.G. Section 3E1.1, and to recommend and if necessary move for an additional one-level reduction if available under that section.

### BREACH OF AGREEMENT

19. If defendant, at any time between the execution of this

Agreement and defendant's sentencing knowingly violates or fails to perform any of defendant's obligations under this Agreement ("a breach"), the USAO may declare this agreement breached. If the USAO declares this Agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this Agreement.

20. Following a knowing and willful breach of this Agreement by defendant, should the USAO elect to pursue any charge that was not filed as a result of this Agreement, then:

   a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

   b. Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this Agreement.

## LIMITED WAIVER OF APPEAL AND COLLATERAL ATTACK

21. Defendant gives up the right to appeal any sentence imposed by the Court, and the manner in which the sentence is determined, provided that the sentence is that agreed to in paragraph 10 above. Defendant also gives up any right to bring a post-conviction attack on the conviction or sentence, except a post-conviction attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

22. The USAO gives up its right to appeal any sentence imposed by the Court, provided that the sentence is that agreed to above.

## SCOPE OF AGREEMENT

23. The Court is not a party to this Agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations, but will determine the facts relevant to sentencing.

24. This Agreement applies only to crimes committed by defendant, has no effect on any proceedings against defendant not expressly mentioned herein, and shall not preclude any past, present, or future forfeiture actions or other civil or administrative actions, or any suspension or debarment action.

25. Defendant and the USAO are free to supplement the facts stipulated to in this agreement by supplying relevant information to the U.S. Probation Office and the Court, to correct any and all factual misstatements relating to the sentence, and to argue on appeal that the Court's sentencing is not in error.

## NO ADDITIONAL AGREEMENTS

26. Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel. Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

//
//

1   This Agreement is effective upon signature by defendant and an
2   Assistant United States Attorney or Special Assistant United States
3   Attorney.
4   AGREED AND ACCEPTED
5   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA
6
    THOMAS P. O'BRIEN
7   United States Attorney

8   JOSEPH O. JOHNS
    Assistant United States Attorney
9   Chief, Environmental Crimes Section

10  /s/                                              7/8/09
11  ERICA K. MARTIN                                  Date
    Special Assistant United States Attorney
12

13
        As an authorized representative of defendant ALLIANCE CHEMICAL
14
    AND ENVIRONMENTAL, Inc., dba ALLIANCE FINISHING AND MANUFACTURING
15
    ("defendant"), I have read this Agreement and carefully discussed
16
    every part of it with defendant's attorney.  I understand the terms of
17
    this Agreement, and I voluntarily agree to those terms.  Defendant's
18
    attorney has advised me of defendant's rights, of possible defenses,
19
    of the Sentencing Guideline provisions, and of the consequences of
20
    entering into this Agreement.  No promises or inducements have been
21
    made to me other than those contained in this agreement.  No one has
22
    threatened or forced me in any way to enter into this agreement.
23
    Finally, I am satisfied with the representation of defendant's
24
    attorney in this matter.
25
26  /s/                                              7/24/08
27  Authorized Representative                        Date
    of ALLIANCE CHEMICAL AND ENVIRONMENTAL, Inc.,
28  dba ALLIANCE FINISHING AND MANUFACTURING

1   .       I am defendant's attorney.  I have carefully discussed every part
2   of this Agreement with the authorized representative of defendant.
3   Further, I have fully advised the authorized representative of
4   defendant's rights, of possible defenses, of the Sentencing
5   Guidelines' provisions, and of the consequences of entering into this
6   agreement.  To my knowledge, the decision of defendant and its
7   authorized representatives to enter into this agreement is an informed
8   and voluntary one.

10  _____                    7/25/08
    CHARLES POMEROY                             Date
11  Counsel for Defendant
    ALLIANCE CHEMICAL AND ENVIRONMENTAL, Inc.,
12  dba ALLIANCE FINISHING AND MANUFACTURING

13

**ATTACHMENT A**

FACTUAL BASIS

Plea Agreement for Mark Hyman and Alliance Chemical and Environmental, Inc., dba Alliance Finishing and Manufacturing

<u>United States v. Alliance Chemical and Environmental, Inc., Alliance Finishing and Manufacturing, and Mark Hyman, PhD.</u>

No. CR-08-_____

1. Alliance Chemical and Environmental, Inc., dba Alliance Finishing and Manufacturing, and Mark Hyman ("the Defendants") and the USAO agree and stipulate to the following statement of facts:

   a. During all times relevant to these charges, up to and including the present, defendant Mark Hyman ("Hyman") was the owner and operator of a business incorporated in the State of California as Alliance Chemical and Environmental, Inc., dba and known as Alliance Finishing and Manufacturing ("Alliance"), located at 1721 Ives Avenue, Oxnard, California. Defendant Hyman has a PhD in mechanical engineering. Alliance is a new source job-shop metal finisher, involved in electroplating metal parts. Alliance discharges wastewater to the City of Oxnard's sewer system and treatment plant, and is a significant industrial user. Alliance has an industrial wastewater discharge permit number 24720 from the City of Oxnard, issued to "Alliance Finishing and Manufacturing" at 1721 Ives Avenue, Oxnard, California. The City of Oxnard operates a Pretreatment Program approved by the California Regional Water Quality Control Program. Alliance generated wastewaters from its electroplating operations, as well as hazardous wastes that were accumulated in drums on the premises, but also in secondary containment bermed areas on the ground surface, which were to be used for emergency purposes only.

Alliance is not an authorized hazardous waste storage facility pursuant to the Resource Conservation and Recovery Act, and does not have any permits for the storage of hazardous waste from either the United States Environmental Protection Agency or the California Department of Toxic Substances Control.

      b.  On numerous occasions during 2005, Alliance knowingly discharged wastewater to the sewer system that had not been appropriately treated, and thus had a pH lower than federal regulatory limits, and/or heavy metals in excess of regulatory limits. These discharges also violated limits contained in Alliance's permit issued pursuant to the City of Oxnard Wastewater Treatment Division approved pre-treatment program. According to the City's analyses, specific discharges sampled by the City of Oxnard included the following: On May, 30, 2005, Alliance discharged wastewater with a pH of 1.44 to the sewer, which flowed to a publicly owned treatment works operated by the City of Oxnard ("the sewer"). On June 11, 2005, Alliance discharged wastewater with a pH of 2.24 to the sewer. On June 16, 2005, Alliance discharged wastewater with pH's of 3.7, 4.1, and 4.2 to the sewer. On July 15, 2005, Alliance discharged wastewater with pH's of 2.7 and 3.1 to the sewer. On August 11, 2005, Alliance discharged wastewater with pH's of 3.6 and 4.3 to the sewer. Between March 29, 2005 and April 1, 2005, Alliance discharged wastewater with a chromium concentration of 190 mg/L to the sewer. Between May 26, 2005 and May 31, 2005, Alliance discharged wastewater with a nickel concentration of 43 mg/L, a chromium concentration of 3.5 mg/L, and a copper concentration of 4.6 mg/L to the sewer. Between June 7, 2005 and June 16, 2005, Alliance discharged wastewater with a nickel concentration of 10.4 mg/L to the sewer. Between July 14, 2005, and July 20, 2005,

Alliance discharged wastewater with a copper concentration of 10 mg/L and a nickel concentration of 24 mg/L, wastewater with a copper concentration of 36 mg/l and a nickel concentration of 100 mg/L, and wastewater with a copper concentration of 21 mg/L and a nickel concentration of 33 mg/L to the sewer. Between August 4, 2005 and August 11, 2005, Alliance discharged wastewater with a copper concentration of 10 mg/L, a nickel concentration of 116 mg/L, and a zinc concentration of 6.7 mg/L, and wastewater with a nickel concentration of 62 mg/L to the sewer. The foregoing described discharges were in violation of federal pretreatment standards, as well as federally-approved pretreatment standards promulgated by the City of Oxnard's Wastewater Treatment Division, and in violation of Alliance's Industrial Wastewater Discharge Permit issued by the City of Oxnard's Wastewater Treatment Division. In addition, on July 19, 2005, defendants did knowingly fail to operate the pH meter recording device on the industrial wastewater discharge line, in that the pH meter recording device was turned off. The City of Oxnard issued defendants a Notice of Violation on July 19, 2005 regarding the lack of a functioning pH recording device. On September 13, 2005, regulatory personnel again observed that the strip chart recording device for the pH meter connected to the final sampling location for the industrial wastewater discharge line was turned off. In addition, on September 13, 2005, defendants did knowingly fail to operate a pretreatment system in that a necessary pump on Tank 3 was clogged, causing wastewater to overflow into the secondary containment bermed area on the ground surface of the facility. Finally, on and between September 13, 2002 to September 13, 2005, defendants did knowingly fail to maintain all records of pretreatment monitoring activities at

the business, as required by their permit, in that defendant Hyman regularly destroyed pH strip charts that had been created, and thus did not have them available to show inspectors when requested.

      c. On October 25, 2006, defendants did knowingly store hazardous waste, namely wastewater with a pH less than 2, at a facility that did not have an appropriate permit, namely Alliance. On that date, inspectors from the City of Oxnard, Wastewater Division, Technical Services Division, Source Control, discovered that hazardous waste was being stored in secondary containment berm areas at the business, which were for emergency use only. Analytical results for samples of wastewater taken that day from the bermed areas showed pH below the hazardous waste regulatory limits (less than 2). On February 22, 2007, defendants did knowingly store hazardous waste, namely wastewater with a pH less than 2, at a facility that did not have an appropriate permit, namely Alliance. On that date, inspectors again took samples of wastewater from the bermed areas at the business which showed pH below the hazardous waste regulatory limits (1.7 and 1.4 respectively).